This case on today's docket is the case of Fargo v. Shettall v. Shannon. We have Janet Doakam, Fargo, Shettall, and we have Mary Welsh, Shettall, and Shannon. So you may stand up for your duties in the showcase. Today we're here to address the constitutionality of the Employee Classification Act based on the due process clause, the equal protection clause, and the special legislation prohibition. And today I'm going to talk about the due process issue and defer to my brief about the other issues, and of course I'll be happy to address any other issues the Court has questions about. And with regard to the due process issue, the primary point of disagreement that we have is whether the construction of the Act, which party has the correct construction of the Act, should be interpreted as either authorizing a judicial function in the Department or an investigatory function in the Department. And I'll address that issue specifically. And then also I'll bolster my due process argument with a brief discussion of the vagueness and the delegation issues. Let me ask an early question here if I can. In the interim since Bartlow won, world painting was decided in which the appellate court in the Fourth District accepted the construction of the Act now being urged by the State that it's only investigative and so forth. However, in world painting the opinion explicitly states that both sides agreed to that construction. There's no agreement in this case. Is that right? Right. There's no agreement. In other words, the State urges us to adopt a certain construction saying that would make it constitutional. You're saying that is not a reasonable construction of the statute. That's what I'm saying. Okay. Great. Go ahead. With regard to the plaintiff's construction of the statute, we are, we follow the wording of the statute. And according to that wording, the Act applies to construction. Just briefly, the Act applies to construction contractors who hire individuals performing services. There is, an individual is deemed to be an employee unless it falls within two categories that are available. A legitimate sole proprietor is one of the categories and that is determined by applying a 12-factor test. Only four of, only eight of those, only four of those, eight of those 12 factors are within the personal knowledge of the contractor at the time that the subcontract is entered. The Act states that it's the duty of the Department to enforce the provisions of the Act. And the statute gives the Department power to conduct investigations and authorize them to impose sanctions. One of the, one of the sanctions that it may impose if it determines a violation of the Act is a cease and desist order, which is punishable by contempt. And another imposition of a sanction could be a stiff penalty. Now, these penalties are assessed by the Director, according to the statute, and these shall be recoverable in a court action. And the penalties are finally determined, according to Section 40 of the statute. The amount of the penalty is finally determined by the Director based on the determination of the gravity of the violation. The Department is required to place the contractor on a department list when it determines repeat violations. And willfulness is proven by a preponderance of the evidence. And it's not completely clear whether this willfulness is determined by the Director, but the assumption based on the way the statute reads that the willfulness determination is probably determined by the Director as part of its final determination. Now, Section 80 is really a key section here because the title of the section is Effect of Final Order. And this indicates that the legislature envisioned that the Department would issue a final order. And the relevance of the fact that a final administrative determination or final order is envisioned, which has specifically been stated in the language of the statute in Section 40 and Section 80, is that deference will be given to the Department's determination by the Circuit Court when the Circuit Court action takes place. There's nothing in the statute that says that the Circuit Court action is de novo. The defendant's construction includes some of the regulations, and its characterization of those regulations is not agreed to by the plaintiff. And the plaintiff construes the regulations differently, but that isn't really a question here because we're talking about a facial violation, a facial statutory issue. Well, if, let's just assume for a minute, let's say we accept the State's interpretation of the Act and we say, yes, that's the proper interpretation. The Director only has an investigatory function. Any trial is de novo. Findings are not admissible, just as in world painting. Won't the State then be bound by that decision that that's the interpretation of the Act? If you determine that the Act requires de novo Circuit Court review and that the person can just ignore their investigation, take their chance in court? I don't think so because there's still the... Okay, you're saying you would not be binding on them? Would not be binding on... On the State. In other words, you know, if that's the interpretation of the Act and we enter an order that says that's the proper interpretation, then they're bound to follow that, aren't they? I believe they are, but that still means that the Act is still unconstitutional even so. And that's because of the vagueness issue. And there are four items in the factors that define legitimate sole proprietor about which the contractor can have no personal knowledge at the time the subcontractors enter so they can't govern their conduct based on... The statute doesn't give the contractor enough guidance to be able to govern their conduct, to be able to know whether they're in compliance or not. And besides that, the wording of the statute really is impossible to comply with. And the reason for that is those four factors that I'm talking about. One of them is requires that the roofing contractor, the roofing laborer, have a substantial investment in capital above his tools and personal vehicle. Well, these roofing subcontractors generally their capital, their investment capital, is their air gun and their tool belt and their truck. And whether that's a personal vehicle or a business vehicle or whether that's substantial is something that really can't be determined by the contractor at the time that the contract is entered. And in addition, whether the roofing contractor is going to file his federal income tax returns. The contractor can send out the 1099, but they can't govern the conduct of the roofing laborer at the time to know whether they're going to file their taxes or not. And additionally, there's the issue of whether their services are available to the general public or the business community at large. That roofing laborer might only want to contract with this particular contractor. Maybe they get better, higher prices, whatever they are, but the contractor can't know whether that roofing contractor is going to choose to offer their services to anybody else at the time that the contract is entered. And the fourth is that whether the laborer's employees will be reported, whether that income given to the employees will be reported to the IRS. That's something that the contractor can't know. And additionally, besides that, are the delegation issues that I think additionally make the statute unconstitutional apart from World Painting's construction of the statute. But with regard to their construction, a problem with their construction is not really true to the wording of the statute. And the main problem is that on page 13 of the council's brief, it says that the act does not authorize a final administrative determination that is subject to the administrative review law. That's a true statement. This act does not authorize final determination that is subject to the administrative review law. But it does authorize final determination, and it authorizes judicial review of the decision. And it doesn't have to authorize judicial review of the decision, but in this case it does. But the administrative review law is a whole separate thing. I'd like to address where they're getting their construction and what they would like to see this construction look like. And they repeatedly compare this statute to the Wage Payment and Collection Act, and they cite the Walters case. And in the Walters case, the wage payment demand issued by the department was not a final administrative order, according to the court, that was subject to administrative review. And that's what I kind of seem to be talking about here, whether we have a final order. And in that case it wasn't. And I agree with that court. I read that statute, and I see where the defendant is coming from if you look at the statute. And I also read the other cases that construed that statute. And they look at that statute and they say, well, as a whole, the purpose of this wage act is to assist employees in seeking redress against employers. And the statute gives the Department of Labor three duties. Those duties are to inquire diligently for violations, institute actions for penalties, and enforce generally the provisions of the act. And they also give the department three powers. And those powers are to investigate and attempt to adjust controversies, to take assignments of wage claims in the name of the director of labor, and to make complaints to courts for violations of the act. They do not make a final determination. There's one section in there where the courts have all said, yeah, there's one section that looks like there might be some kind of determination. But as a reading of the statute as a whole, they've determined that this is investigatory and that the referral to the courts is just a referral to the court for a de novo adjudication. And their job is to assist employees in getting whatever wages are due. And with regard to the Employee Classification Act, that's a whole different role. It's more of an adversarial role envisioned. And there is specifically a final order envisioned. And then the difference would be, well, what is that circuit court hearing all about? And is it de novo, or is there deference to? And I think the fact that there's a final order envisioned and specifically stated means that there really has to be some deference. And that's the whole difference between those two acts and those two constructions. Another thing that the defendant has cited for us to look at is the National Marine case. And in that case, they had an agency notice of an EPA violation, and the person appointed to judicial review of that notice. And the court said, no, they've only performed an investigatory function. They don't have a final order here for us to review. Well, if you look at the EPA regulatory scheme, the agency issued the notice in that case. The agency only performs an investigatory function, but the Pollution Control Board performs the adjudicatory function. And what they were saying in that case is go through the whole process, get your final order from the board, and then come to court. And that particular statute has an administrative review law provision in it, too. But that's a different animal. They actually have an adjudicatory body that's separate from the investigatory body. And also, it's interesting, in the Wage Act, there's a provision in the Wage Act for them to implement a scheme where there would be an administrative adjudicatory resolution of those wage claims subject to appropriation. And that doesn't exist yet, but there is a provision in the statute for a separate adjudicatory scheme. And this statute is lacking. And a reading of the entire Act with the orders punishable by contempt, the final determinations, the assessment of penalties, and all kind of move toward the idea that it's an adjudicatory purpose. And the thing that really distinguishes these from those other Acts is that, well, I guess the purpose of this is for punishment and to provide a penalty. So with those things in mind, and in light of the vagueness issue and the delegation issue that I've touched on, I guess I'd like to move forward and talk briefly about the delegation issue to kind of further point out the infirmities in the statute. In my brief, I've talked about the burden of proof, and the problem with the burden of proof in this situation is twofold. One is the willfulness issue is based on a preponderance of the evidence, and it can lead to criminal violations and punitive damages and double penalties. Well, of course, if a criminal charge was filed, the proof would have to be beyond a reasonable doubt, right? I would think. Okay. And then I talked about irrevotable presumption, and I call it an irrevotable presumption because the violation is defined by proof of, is it an individual, is he or she performing services? That is the quote-unquote violation. And then the proof to rebut that violation requires those four issues that the contractor can't really know without the cooperation of the roofing laborer who may or may not be willing to cooperate with the contractor. And then the definition of substantial with regard to their capital, I don't think that it would just be impossible for her to comply with him because it's not clearly defined. And then the lack of procedural safeguards is a second issue, and I've talked about that in the context of the national marine case. And with regard to the investigations, the respondent does not have access to that investigation file in order to prepare a defense. So for those reasons, with regard to the due process issue, it's plain exposition that this statute is unconstitutional and void. I'd be happy to address any questions. I don't think so. You'll have the opportunity for rebuttal. Thank you. Thank you. Ms. Welch? Good morning, Your Honors. May I please report? I'm here on behalf of, actually, it's Director Costigan now. So as counsel pointed out, the central question here is the due process question, and World Painting resolves that question. Well, okay, World Painting, by its terms, says the parties agreed to the construction of the statute, and for purposes of that case and under that agreement in World Painting, they say we accept that construction. That's not exactly correct. I represented the department in World Painting as well. Okay, just to read from the decision, we allow the parties agreed interpretation of the act to control in this case. Right. What does that mean? Well, first, the agreement part, if you look at the briefs and you listen to the argument, you will notice that the plaintiff in that case agreed that our construction was constitutional, but disagreed with the fact that it could be construed that way. So in fact, the parties agreed only that our construction was constitutional. Right. Okay. And there's no such agreement in this case. Well. So if we accept, here's my point. You know, in World Painting, and they specifically say here's another spot, we allow the parties agreed reading of the act, which we find otherwise constitutional, to control our disposition of this case. I mean, there's a difference there because in this case, if we accept your construction and say that's what the statute says, then that's going to be a decision that is going to be binding on everybody, not just the parties in this case. Right. Well, this is the department's interpretation of the statute. We have always felt that it's binding on us. And I believe I heard counsel say that in fact our construction is constitutional. It's just that she disagrees with it, just as the plaintiff in World Painting did. Right. But both plaintiffs believe that the act authorizes the department to engage in quasi-judicial decision-making, both the plaintiff in World Painting and the plaintiff here. The department has consistently put forth the construction that it is not authorized to do anything other than investigate. Well, and see, that is the problem in Part 101 because that's not what the department argued in Part 101. Actually. Of course, we were in that highly expedited 307D TRO appeal, but it was not until petition for rehearing that the department put this forth. In other words, I mean, you argued in the original case that procedural due process was satisfied by having the right to request an informal conference and so forth. Well, actually, we also argued, I went over all of that. Yeah, I brought it with me here. Right. You know, I'm going to bring it with me. Right, right. I brought it all. And so what we argued, what the plaintiff had been arguing in the first appeal was that there was no opportunity to be heard before deprivation. And we argued two things. We argued there was no deprivation, just as we're arguing here. And we also argued that in the initial, you know, the short memos, we said that, in fact, there was an opportunity to be heard. And so we were just squarely addressing their arguments. It was only when Bartlow 1 said, well, it looks to us like the department is authorized to make deprivations without a hearing, that in our petition for rehearing, we squarely addressed this adjudication investigation question. And so that, I mean, that aspect of the due process argument didn't really arise either in the first circuit court decision or in the original Bartlow 1 case. It wasn't until the petition for rehearing and also, you know, as counsel pointed out, our PLA, that we said, you know, this is really a question squarely now of adjudicative power versus investigatory power. And we deny that we have any adjudicatory power, that we've been authorized to do any sort of adjudication. Okay. I want to pin you down on that because I want to make sure exactly what your construction of the statute is that you're asking us to adopt. You're saying that under the statute, the department investigates but has no authority outside of court to in any way enforce their decision. Correct. I mean, they assess, you know, proposed penalties and so forth. Correct. But they can't do anything to enforce that short of a circuit court proceeding. Right. And it denies. Okay. And just a minute because I'm going to take you through a series of questions here. Sure. And at that, your construction of the statute is at that circuit court proceeding, it's a de novo proceeding. And the department has the burden of proof of proving a violation of the act. Correct. All right. Now, just looking at the statute, I mean, it sounds like, I mean, it says the amount of the penalty when finally determined, I take it by the department, may be recovered in a civil action filed in any circuit court. I mean, it sounds like it's just more like a collection action, but that's not what you're saying, right? That is not how the department construes the act. No. The department really construes it just like the wage act in that they have only investigatory powers that you go to the circuit court for a de novo hearing because otherwise, if it were, as plaintiff suggests, then there wouldn't be that section 80 that says there's the findings are not even admissible. I mean, if there were going to be review of the findings, if there were going to be deference to the department's findings, they wouldn't be inadmissible. Okay. I mean, that just doesn't make sense. So when you look at the act as a whole, you see that it has to be a de novo hearing because you can't bring the findings in. You can bring obviously the evidence supporting the findings, but not the findings themselves. And thus, there's no deference to them. And this is why, you know, there's no discussion about the administrative review law in the act because the general assembly didn't intend for there to be a final administrative decision that's subject to judicial review. So let me ask you this. If let's say we accept your construction of the act and we say this is what the act can reasonably be interpreted to say under that construction it's constitutional, that's what the act says. In this case where there's no agreement about that, unlike world painting, are you bound by that then? Well, yes. I mean, we – In other words, and you're prepared to live with that construction. I mean, we do live with that. That's how we operate. Okay. I mean, that's how the department operates. It understands its reading of the act is that it is authorized only to investigate, that it's, as world painting put it, it's a no consequences power that it has. There are no legal consequences to what the department does. No change in status, no – I suppose the assessment of fines gives pause. But – and in Part 1 it's construed assessment as levy. But, in fact, all the department does is look at all the facts and say, well, we think that given that, for example, this is a huge company. It's been in business for 50 years. Not plaintiff, but it's a hypothetical. It knows – it knew exactly what it was doing because it had employees up until a year ago and suddenly it fired everybody and hired all the same people back just so it wouldn't have to pay workers' comp with Social Security. Then, you know, the gravity of that offense would be quite different and thus the penalty would be quite different from, you know, a mom and pop operation that had employees but, you know, there was a flu epidemic. They needed to finish a job in a week so they had to bring in some guys and they kind of hadn't figured it out, you know. Then the department – remember, the fine is up to a certain amount per day, per person. And so that means the fine could be zero, in fact, you know, so given the circumstances. And so, again, the department does not understand the act to allow it to make a final administrative decision that has the force of a judicial order. It only has investigatory powers. It's a – again, similar to the Wage Act, it's a no consequences, you know, as Will Panting said, it's a no consequences decisions that the department is authorized to make. And in this de novo trial, then the department would have to prove from scratch that there was a violation of the act? Correct. Correct. And similarly to other positions, you know, the department's burden is to show that there are these people who are providing services for the, you know, the defendant in the case. And so – and then similar to the Unemployment Insurance Act, you know, if you – the defendant has to – has the burden of proving that they're excluded from the act. And this is – remember, you know, statutes that are enacted for the general welfare, these statutes must be construed in favor of inclusion. And so that permits there to be the burden of proof shifted to the employer to prove that these, you know, that people are not employees, that it is outside – it's acting outside of the act. And this brings up to sort of move to the vagueness aspect of this. The plaintiff contends that nobody can understand what these terms are. In particular, the substantial investment, the – and can't – doesn't know the IRS filing status of the – of a subcontractor or so on. And whether it makes its power – its services available to the general public. And also whether it has employees and reports to the IRS. Well, of course people understand this. Their own affidavits in the record use exactly these same terms. So it's really disingenuous of plaintiff to say nobody can understand what these things mean when in fact their own evidence that they put in the record shows that they have – they have at least some understanding of what these things mean because otherwise they wouldn't say them. So again, the department – this is the sort of thing where it would be easily discoverable by somebody who wants to have a sole proprietor and say, if you have a contract with me, you have to sign this statement saying that, you know, just like the affidavits. It would be very simple to know these things. So while it's possible that a major contractor like plaintiff would not – the contractor here would not know off – you know, just off the top of its head whether somebody, if they have employees, you know, goes to the – reports them to the IRS. It can ask. It must ask, in fact. And these terms are all very similar to the terms that are in the Unemployment Act, in the Wage Act. Remember, the concept of an employee is not a new concept to this Act. The concept of an employee versus an independent contractor appears throughout Illinois labor law. It appears, you know, in the Unemployment Insurance Act, which is insurance. It's not a tax. It appears in the Wage Act. It appears throughout the statutes. And so, you know, to not know – again, the focus normally of employees is direction and control. And interestingly, neither affidavit, neither the individual's affidavit nor the partner's affidavit said, I don't have direction and control of these guys. And the guys don't say they don't have direction and control over me. And so, you know, to leave out the most important aspect of the employer-employee relationship, you know, doesn't really make any sense here. Now, if I can speak just for a minute about the Equal Protection Special Legislation aspect, unless the department – unless the bench has questions about due process and vagueness. The – again, generally speaking, the deference is given to a statute and such that unless there's a fundamental right at issue, it needs to have – the statute needs to have only a reasonable, rational relationship to legitimate goals of a state. And here, there are surely many legitimate goals for the Employee Classification Act. As the legislative history exhibited and as the amicus briefs attachments supported, there has been, in Illinois since 2001, a growing problem of misclassification across the board. Generally, there was a 55 percent increase from 2001 to 2005. And also, there was a huge increase, a 10 percent increase alone in the construction field between the 2001-2005 average and 2005 itself. So there is an enormous difference in construction in particular. And construction was singled out also because of the revenue problem. The – by misclassifying employees as independent contractors, the state loses revenue in at least three different ways. It loses the unemployment insurance contributions. And here, you know, the – that Illinois report – and I want to mention, too, that in their reply – or attached to their reply brief, the plaintiffs added all of these documents that were never in the record and thus have no – including a 2009 report from the GAO – documents that have no purpose here because they weren't in the record below and the circuit court didn't have an opportunity to look at them. But the – in Illinois, also, the contractors – well, everywhere, I suppose – workers' comp premiums for contractors, not surprisingly, are much higher than the average. And so the – as the Illinois report showed in the 2001-2005 range, the department lost somewhere in the neighborhood of 23 to 34 million dollars a year from misclassification just in the construction industry. And in addition, for income tax, it lost between 10 and 17 million dollars a year. So in the construction industry in particular, misclassification is accentuated and it results in a – you know, in an enormous loss of revenue to the state, which is one of the – that plus one of the legitimate purposes of the act. Another legitimate purpose, of course, is that – is to protect the employees. When you don't have workers' comp for your guys, if your guys have a – you know, have an accident, either they're not – if they're independent contractors, unless they're paying for it themselves, they're not – they don't get workers' comp unless they go in and say, well, actually, I was an employee. And what happens then is even though the employer wasn't paying premiums, if they're found to be an employer, then the guy will get workers' comp for which the employer never paid premiums. Also, the – if you're – if you're misclassified as an independent contractor versus an – you know, versus an employee, you don't get unemployment benefits and you have to pay your entire Social Security as opposed to the employer paying it. So – and because the employer doesn't have to pay Social Security, doesn't have to pay workers' comp, which can be up to – I think the Illinois report said something like $25 per hundred dollars. I mean, of wages. It's a lot. It's really high. And it doesn't have to, you know, pay workers' comp, Social Security, unemployment. Then they can underbid everybody. Every – every employer that complies with the statute by a lot because these charges, which – these payroll charges would normally have to be taken into account when you make a bid to, you know, to a homeowner, say, to do a roof. So there would be a huge difference between a compliant – an act-compliant contractor who made a roofing bid, as for example here, and a contractor who was non-compliant and thus didn't have to pay all of these costs. So those three legitimate state purposes, leveling the playing field among compliant and non-compliant contractors, also making sure that employees get employee benefits, including fair wages and so on, and state revenue. Those are all three very important legitimate state interests that are the rational basis for the act here. So I think that's everything I had to say. Just we – just to close, we believe that world painting got it right, that, in fact, the statute is sort of a no consequences – no legal consequences statute. What happens is that the department gets a complaint, it investigates the complaint, it invites the subject of the complaint to come in and give the same kind of evidence that plaintiff put in the record below, affidavits and so on, you know, contracts and so on, all of those things, and to show that, in fact, it is compliant with the statute. And if a contractor is unable or unwilling to give those documents, then the department will conclude its investigation with a preliminary, you know, investigative determination that it has violated the statute. And it will then figure out what, under the circumstances, the gravity of the, you know, of the violation and so on, it will figure out what an appropriate penalty would be to seek in an enforcement action. It then has to go to the circuit court. It has to prove up its case, and its case being, you know, that this is – this guy provided services to this, you know, to this contractor. And then a circuit court will decide whether what the – whether, in fact, this is the person, the individual is an employee, and whether there should be a penalty, and if so, what that penalty should be. But the department does not make those determinations in any sort of legally binding way. It has to make those – it has to come up with those conclusions in order to know whether or not to proceed with an enforcement action in circuit court. But its decision, you know, its findings, its conclusions are not even admissible in that circuit court proceeding. And this is, you know, again, this is – although plaintiff, you know, says, well, if there's an order, it must be a final administrative order. It isn't. If that were true, then it would certainly be admissible in the circuit court action. But again, the decision of the department isn't even admissible. And if it's not admissible, it's surely not being given deference and not being reviewed. We ask that you affirm. Thank you, Ms. Welsh. Ms. Jochum, do you have a rebuttal? First of all, the counsel mentioned that the plaintiffs left out the direction and control element of the equation out of their affidavits. Well, instead, there are ten factors in the independent contractor test within the regs. And the plaintiffs attested to each of those elements of the independent contractor test, which is set forth for the purpose of proving direction and control. And they didn't specifically say direction and control, but they said each of those elements. So they have attested to direction – to not directing and controlling the workers. Second, she compares this to the Wage Act and the Unemployment Act, and I've been contrasting it. But both of those acts allow hearings. And so that's one thing that we definitely need to consider. And then if you look at the Wage Act, where it really – I mean, what she's saying in this act is, if you look at the Wage Act, that really is that. And this, she's having to leave out things in order to make it fit into that mold, and that's not appropriate on a statutory constitutional issue. Now, on a regulatory facial challenge, you can leave things out, you can put things in, you can make it look like it's supposed to be right. And that's what the Wage Act issues were. The Wage Act issues were regulatory challenges. Well, they weren't even constitutional challenges. But they were construing the statute. They were construing the regulations. And you can do that, but when the legislature tells us what the statute says, the court can't change it. And if the legislature leaves something out, you can't add it. And if the legislature puts something in, you can't take it out. And the legislature put in that this was a final order, and they put in that there was a final determination as to the amount of the penalty to be made by the director, and you can't leave that out. And you can't add in de novo hearing if it isn't really supposed to be there. You can't fix it. If it's wrong, the court can't fix it. So, also, with regard to the roofing laborers making a statement in advance, filing an affidavit in advance that would attest that, yes, we are going to file our income tax returns, and, yes, we have substantial capital beyond our truck and those things that she says that they can know in advance. My position is that they can say, yes, I'm going to file my income tax return, but they might not. That would give your client some protection, though, wouldn't it? I mean, you know, as their attorney, isn't that something you'd advise them to do under the circumstances with this act out here? I don't think that would really help that much because those four elements are just not something you can nail down, and she shouldn't. And there's even case law out there that is similar to this where a constitutional statute was deemed unconstitutional because the person who was responsible for the act had to depend on compliance by another person over which, by statutory requirement, they have no direction or control. So they shouldn't be judged in compliance by something that somebody else does or doesn't do. And I think that causes a constitutional question. But, sure, I mean, if we're stuck with this statute, my client is going to be advised to have an affidavit, but I don't think the affidavit is something she should have thought of, or it isn't really going to help. And then also, I don't like being called disingenuous, and as I said, those things are not – it isn't a foregone conclusion that an affidavit would have solved the whole issue because these people came after the fact. Two of them out of the ten came after the fact and said, yeah, I'll help you. I'll tell you. I'll tell you. I'll attest to the fact that I filed my federal income tax return. Well, where are the other ones? You know, you have to find all of your subcontractors after the fact to defend your case. That's what was going to be required. So with regard to a rational basis, she talks about decreased revenue. The income tax issue, the Internal Revenue Service enforces that and shares information with the state, and the state can govern the compliance of the income tax based on the federal, and they don't have to spend extra resources getting those dollars because the federal government takes care of that. They can if they want to, but it's not necessary. The workers' comp issue, that workers could provide workers' comp, I guess. You don't have to be an independent contractor. You don't have to be an employee to have workers' comp available, and there's no indication that they don't add that into their bid. And then the unemployment insurance issue, that's another situation where they don't have to be employees in order for the contract to be liable for the unemployment insurance tax. That's just part of the Act. The Act has a broad definition. It doesn't restrict the right of a sole proprietor to be a sole proprietor or to hire independent contractors, and this kind of delves into some deep waters, but even the IRS recognizes that. When they change the definition of independent contractor, they have a grandfather called Section 530, and you can't just – when the rules change, you can have what's called 540 protection, and I'm not a federal income tax lawyer, and I didn't go there because of page limit concerns. But that was – the unemployment insurance tax governs whether they're employed. It doesn't govern the status as an employee, and I've addressed that in my brief. That's a whole different ballgame. Thank you. Thank you, Ms. Yocum, as well, for your briefs and arguments, and we'll take them at our own advice at the end when we're rolling them forward.